THE EQUITABLE TRUST COMPANY OF NEW YORK, AS ANCILLARY ADMINISTRATOR OF THE GOODS, CHATTELS AND CREDITS OF VIVIEN HELEN DE LA POER BERESFORD, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67259. Promulgated October 16, 1934.

*James O. Wynn, Esq.*, and *W. C. Hagathan, Esq.*, for the petitioner.

*Frank P. Horner, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner, in determining a deficiency in estate tax of $86,861.34, added, *inter alia*, the following items to the decedent's gross estate as reported:

1. Interest of decedent under deed of trust made by Daniel S. Miller dated Nov. 21, 1865 to U. S. Trust Company as trustee.    $266.33

2. Accrued income due decedent under deed of trust made by decedent on December 14, 1920 to Equitable Trust Company, trustee, Chase National Bank, successor trustee_____ $20,112.15
3. Accrued income due decedent from trust for her benefit under the will of her mother, Edith Kingdon Gould, deceased, Chase National Bank, trustee_____ 3,223.30
4. Undistributed income due decedent, subject to tax litigation in above estate of Edith Kingdon Gould_____ 12,773.80
5. Accrued income due decedent from trust under will of her father, George J. Gould, deceased, Commercial Trust Company of New Jersey, trustee_____ 1,250.48
6. Accrued income from trust fund under the will of George J. Gould, deceased_____ 1,168.27
7. Accrued income due decedent in the possession of the executors of the will of George J. Gould_____ 7,249.36
8. Value of annuity payable to decedent or her executors during the lives of Howard Gould and Helen G. Shepard_____ 76,248.00
9. Principal of the trust created by the decedent on December 14, 1920_____ 1,353,511.41

The petitioner does not question values or the figures used by the Commissioner. The issues raised by the petitioner, after eliminating those waived or disposed of by the stipulation, are:

(a) Has the property, above listed, a situs for tax purposes within the United States where the decedent was a nonresident alien?

(b) Did the Commissioner err in including in the decedent's gross estate item 8, listed above, representing " the commuted value of certain interest payable to the decedent and after her death to her administrators on portions of the trust held for the benefit of Howard Gould and Helen G. Shepard, respectively, in the residuary estate of Jay Gould, deceased?

(c) Did the Commissioner err in including in the decedent's gross estate item 9, representing the corpus of an irrevocable trust created by the decedent?

The parties have agreed upon most of the facts of record.

The decedent, Vivien Helen de la Poer Beresford, was the wife of Lord Decies, a British subject, and was from the date of her marriage, February 7, 1911, to the date of her death, February 3, 1931, domiciled in and a resident of England. She died intestate, leaving three children, domiciled in England, to survive her. The petitioner is the ancillary administrator of the goods, chattels, and credits of the decedent.

Daniel S. Miller on November 21, 1865, created a trust of which the United Trust Co. of New York was trustee. The grantor's daughter died on January 5, 1931, leaving no child or descendant of a child to survive her. Thereupon the decedent, under the terms of the trust, as one of the next of kin of the daughter, became entitled to receive from the trustee $266.33 of the corpus of the trust, but she did not receive the money prior to her death about one month later.

The decedent owned at the time of her death $15,997.10 in ac-

crued and undistributed income to which she was entitled under certain trusts created by the will of her mother, Edith Kingdon Gould. Of this amount, $12,773.80 was being held subject to some tax litigation, the nature of which is not shown by the record. The trustee named in the will of Edith Kingdon Gould was the Equitable Trust Co. of New York.

George J. Gould, the decedent's father, placed certain property in trust with the Commercial Trust Co. of New Jersey and provided that certain income from the trust property should be payable to the decedent for life. The decedent at the time of her death was the owner of accrued and undistributed income of $9,668.11 to which she was entitled under this trust.

Jay Gould, the decedent's grandfather, died in 1892, survived by six children, George J. Gould, Edwin Gould, Howard Gould, Helen Gould (later Helen Gould Shepard), Anna Gould (later the Duchess de Talleyrand), and Frank Gould. He provided in his will that the residue of his estate should be divided into six equal parts and each held in trust separately by his executors as trustees. Each child was to receive the income from one part for life. Upon the death of any child the share held for that child was to go to the issue of that child in such proportions and at such times as the child might appoint by will, or, if no appointment should be made, then, to such issue in the proportions provided by the laws of New York in the case of intestacy, but, if no issue survived the child, then to the other surviving children or their issue *per stirpes*. George J., Edwin, Howard, and Helen became executors and trustees. These executors and trustees had rendered no accounting up to 1916 and in that year an action was commenced in the New York Superior Court for the settlement of their accounts. This litigation continued until May 31, 1927, when a judgment was entered confirming a compromise settlement or agreement. In this litigation Frank Gould, the Duchess de Talleyrand (formerly Anna Gould), their children, and various remaindermen claimed the right to surcharge the four trustees for various things which they had done. A referee's report made in 1925 was favorable to some of these claims and the trustees finally agreed to pay $2,000,000 into each trust. Three million dollars had been demanded, but it was pointed out that since Howard and Helen had no children and were not likely to have any, the amount of $4,000,000 received by the two trusts for their benefit would eventually be divided among and become a part of the other four trusts, so that each would eventually receive $3,000,000. The objectors demanded, however, that the trustee pay annually during the joint lives of Howard and Helen a certain amount, and during the life of the survivor a correspondingly smaller amount, to com-

pensate for the loss of income due to the fact that the $4,000,000 paid into the trusts for Howard and Helen would not benefit the other four trusts until Howard and Helen died. A settlement along these lines was agreed upon. The judgment confirming the agreement ordered that Edwin Gould, Howard Gould, and Helen G. Shepard " pay annually to the seven children of George J. Gould by his first wife, considered as a group, to-wit, to Kingdon Gould, Jay Gould, George J. Gould, Jr., Marjorie Gould Drexel, Lady Decies, Edith Gould Wainwright, and Gloria Gould Bishop and their respective executors and administrators in equal shares the aggregate sum of Fifty-four Thousand ($54,000) Dollars * * * so long as Howard Gould and Helen G. Shepard shall both live and after the death of one of them the sum of Thirty Thousand ($30,000) Dollars during the life of the survivor of said Howard Gould and Helen G. Shepard * * *." The decedent's share of the amounts thus payable was $7,714.29 during the joint lives of Howard and Helen, and $4,285.72 during the life of the survivor. The Commissioner determined that these payments represented an annuity having a value at the decedent's death of $76,248, which he added to the gross estate as above set forth.

The decedent's husband, Lord Decies, was indebted to various persons, and in the fall of 1920 the decedent borrowed a sufficient amount from her father, George J. Gould, to pay off these debts. George J. Gould, in order to protect the children of the decedent and to assure repayment of the amount advanced by him so that all of his children would be upon an equal basis to share in his estate, required the decedent to create a trust relating to her share of her grandfather's estate which she would receive when her father died. The trust deed was dated December 14, 1920, and the Equitable Trust Co. of New York was made trustee. The Chase National Bank succeeded as trustee. The decedent provided in the trust that after repayment to her father's estate of the amount advanced by her father, the remainder of the property should be held in trust and the net income paid to her for life. Any income accrued at the date of her death was to be paid to her executor or administrator. The principal at her death was to be paid " to the lawful descendants of the party of the first part [the decedent] in such proportions as the party of the first part shall in and by her last will and testament appoint, and in case of failure to make such testamentary appointment, then to such descendants absolutely in equal shares *per stirpes* and not *per capita;* or if there shall be no such descendants living at the time of the death of the party of the first part, to the person or persons named in her last will and testament, and failing such testamentary disposition, then to the person or persons and in the interests and proportions to

whom and in which under the laws of the State of New York existing at the time of the death of the party of the first part said Trust Fund would have been distributed had all thereof been personal property and had the party of the first part died possessed thereof and intestate and a resident of the State of New York." The trust was irrevocable. The decedent's three children were all living when this trust was created. George J. Gould died testate in 1923 and provided in his will that the share of the estate of his father, Jay Gould, held in trust for his benefit should be equally distributed among his seven children, of whom the decedent was one. The corpus of the trust at the date of the decedent's death consisted of the property which the Commissioner has valued at $1,353,511.41.

All of the tangible property and all paper evidences of ownership of the intangible property, including all documents evidencing rights to income, certificates of stock and bonds, involved in this proceeding were actually and physically located within the United States at the time of the decedent's death. The various corporate trustees were all domestic corporations.

All of the property which the Commissioner has included in valuing the gross estate of this decedent was within the jurisdiction of the United States for purposes of the Federal estate tax at the time of the decedent's death. The petitioner has argued this point very briefly. It has cited no case to support its contention and we know of none. The source of the income involved was in the United States. The property not only had a situs in the United States, but also received "the full protection" of the laws of the United States. See the full discussion of the question of situs for tax purposes in *Burnet* v. *Brooks*, 288 U. S. 378.

The petitioner also argues briefly that "the commuted value of the interest payable after the death of the decedent to her administrators, pursuant to the terms of a judgment of the Supreme Court of the State of New York entered May 31, 1927, should not be included in the decedent's gross estate for purposes of the federal estate tax." The argument advanced is that the decedent had no interest in this property within the meaning of section 302(a) of the Revenue Act of 1926 because by the terms of the judgment the decedent's rights were limited to the period of her own life, and the rights of her administrator were separately founded upon the provisions of the judgment itself and were not derived through or from the decedent by reason of any law with respect to intestacy. The only basis for such an argument is that the judgment provided that the payments should be made to the seven children "and their respective executors and administrators." We are unable to see why the use of this language, made necessary by the possibility that

Howard or Helen might outlive (as they did) some of their seven named nephews and nieces, prevents this decedent from having an interest in the payments to be made after her death which would be subject to the tax. She could absolutely control the use to be made of such payments. This argument does not deserve further discussion.

The only remaining question, the one most strenuously argued by the petitioner, is whether or not the value of the principal of the trust created by the decedent on December 14, 1920, was properly included in determining the value of the gross estate under any of the provisions of section 302 of the Revenue Act of 1926. The petitioner would group the principal and the accrued income of the trust at the date of death. However, the two are quite different. The accrued income belonged to the decedent and was clearly subject to the tax. The Commissioner has mentioned subdivisions (a), (c), and (d) in attempting to justify his determination that the corpus was subject to the tax.

The Supreme Court has held that subdivision (a) of section 302 of the Revenue Act of 1926 does not in any way refer to or purport to modify (d); (d) is not a mere specification of something covered by (a), but covers something not included in (a); and (a) standing alone would not extend to the transfers brought into the gross estate by (d). *Porter* v. *Commissioner*, 288 U. S. 436. The property involved in that case was held subject to the tax because the transfers were covered by subdivision (d). The Court there was apparently of the opinion that (a) refers to a vested estate in the property. Cf. *Warner* v. *Commissioner*, 72 Fed. (2d) 225. But obviously the Court was of the opinion that Porter had no interest in the property within the meaning of (a). That being so, it seems even more clear that the decedent in the present case had no interest within the meaning of (a) in the corpus of the trust created on December 14, 1920. Cf. *United States* v. *Field*, 255 U. S. 257. Her powers over that property were certainly no greater than those retained by Porter over the property which he placed in trust. The corpus of the trust in the present case did not pass from the decedent at her death. Title to the property had passed from her previously. Her descendants, a class consisting of three children living at the time she created the trust and also at her death, were remaindermen who had a vested remainder in the property prior to her death. She retained no power to divest this remainder. It could have been divested only by the death of all of her descendants during her lifetime. See sec. 40, Real Property Laws of New York, 49 McKinney's Consol. Laws of New York, Anno. p. 53; 40 McKinney's Consol. etc., p. 16 *et seq.*: Tiffany on Real Property, §§ 139, 315, 330;

*Elizabeth B. Wallace, Executrix*, 27 B. T. A. 902; affd., 71 Fed. (2d) 1002; *Louis C. Raegner, Jr., et al., Executors*, 29 B. T. A. 1243; *Coolidge* v. *Long*, 282 U. S. 582. Thus (a) does not bring this property within the decedent's gross estate. Cf. *Nanaline H. Duke et al., Executors*, 23 B. T. A. 1104; affd., 62 Fed. (2d) 1057; 290 U. S. 591.

The decedent retained some control over the title to and the enjoyment of the corpus. Her death terminated that control and was the source of valuable assurance passing from the dead to the living in respect of the title to that property which Congress might have reached. Cf. *Porter* v. *Commissioner, supra; Saltonstall* v. *Saltonstall*, 276 U. S. 260. However, the gross estate is specifically defined in section 302 and includes only the property therein specified. *Porter* v. *Commissioner, supra.* Therefore some provision must be found which includes the property in question—otherwise it was erroneously subjected to tax by the Commissioner.

Section 302(c), as it was at the date of the death of this decedent, required that the gross estate include the value of all property at the date of death "to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after death." The respondent concedes that this trust was not made in contemplation of death, but he contends that the transfer was made to take effect in possession or enjoyment at the death of this decedent. The fact that the income was payable to the decedent for life is not a sound basis for holding that the transfer was one intended to take effect in possession or enjoyment at or after death. *Burnet* v. *Northern Trust Co.*, 283 U. S. 782, and *Morsman* v. *Burnet*, 283 U. S. 783, following *May* v. *Heiner*, 281 U. S. 238. If the transfer was one intended to take effect in possession or enjoyment at death, as the Commissioner contends, it must be because of its provisions relating to the remaindermen, including those provisions whereby the decedent retained the right to designate the proportions in which her descendants should share the corpus. Less than one month after this decedent died section 302 (c) was amended to include " a transfer under which the transferor has retained for his life  *  *  *  (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom." House Joint Resolution No. 529, approved March 3, 1931. The amendment had no retroactive effect upon estates of decedents who died prior to its enactment. *Charles H. W. Foster et al., Executors*, 26 B. T. A. 708. It is at least doubtful whether this section as it existed prior to this amendment applied

in a case like the present. Cf. *Charles H. W. Foster et al., Executors, supra; Elizabeth B. Wallace, Executrix, supra; Nanaline H. Duke et al., Executors, supra.* Such a doubt must be resolved in favor of the taxpayer. *Gould* v. *Gould,* 245 U. S. 151.

The Commissioner included the principal of this trust in the gross estate because "under the terms of the trust agreement the decedent reserved the right to appoint in her will the proportions of the principal distributable to her lawful descedants" and "such a reservation constitutes a power to alter or amend the trust and brings it within the provisions of section 302(d) of the Revenue Act of 1926." That provision of the act is as follows:

> The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * * to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *.

The petitioner argues that the decedent had no power to alter or amend the provisions of this trust; she had power under the trust agreement to designate the proportions in which her descendants were to receive the trust property, but that was a power given in the trust instrument, not a power to alter or amend the trust, and even an exercise of that power would have been a compliance with, rather than an alteration or amendment of, those provisions; therefore the value of the property is not to be included in the gross estate because of the provisions of section 302(d). The decedent retained the power to fix the share of each one of the group of takers. But as she had not theretofore fixed the share each was to take, the retained power to fix for the first time was not a power to change. If she failed to exercise the power an alternative provision of the trust instrument became effective, under which they were to take equally. The retained power was a power to supplement, amplify, or make more specific, but not to alter or amend. Congress chose words which do not cover this case and we have no power to enlarge the provision, even though the power in question might afford as good a basis for a tax as the powers mentioned in the act.

The present case differs from one wherein the grantor does not divest himself of the remainder in the trust deed, but reserves the right to name a remainderman by some other instrument. Cf. *Luis James Phelps et al., Executors,* 27 B. T. A. 1224. In that case the transfer was incomplete until death. (a) and (c) might both apply. The present case differs also from one wherein a power to

change remaindermen is retained. (d) would apply to that case. Cf. *Day Kimball et al., Administrators*, 29 B. T. A. 60; *H. T. Cook et al., Executors*, 23 B. T. A. 335; affd., 66 Fed. (2d) 995; certiorari denied, 291 U. S. 660. Here the decedent could not divest the class named as remaindermen, but could only designate the proportions in which the members of the class would take. In so far as the trust provided that the grantor could name other remaindermen in her will in case all of her descendants had predeceased her, this case is like *Stephen Peabody et al., Executors*, 24 B. T. A. 787, and like that case could be distinguished from *Union Guardian Trust Co., Executor*, 26 B. T. A. 1321. However the reasoning used by the Board in the later case was not adopted by the appellate court. *Dort* v. *Helvering*, 69 Fed. (2d) 836. Cf. *Porter* v. *Commissioner, supra.*

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

ARUNDELL, dissenting: The majority opinion proceeds upon the theory that the retained power of the decedent to fix the share of each of the group of remaindermen, being but a "power to supplement, amplify or make more specific", was not a power to "alter" or "amend", hence does not come within the literal words of the statute. The power to fix the share of each one of the group would seem to be a power to change the enjoyment through the exercise of a power to alter or amend. On failure to exercise the power, each of the remaindermen would share equally; by an exercise of it the shares could be very materially changed. As long as the creator of the trust lived there was the possibility of exercise, and her death was "the source of valuable assurance passing from the dead to the living. That is the event on which Congress based the inclusion of property so transferred * * *." *Porter* v. *Commissioner*, 288 U. S. 436. It is no doubt true, as contended by petitioners, that each of the remaindermen had a vested interest in the trust property. But it is equally true that the decedent had the power to change materially the portion which any one, or all, would ultimately enjoy. The statute requires the inclusion of all property transferred in trust "the enjoyment of which remains at the time of his death subject to any change by the exertion of a power by himself alone or in conjunction with another." *Porter* v. *Commissioner, supra.* If the trust instrument "contain a right to change the enjoyment, it is within the terms of the act." *Dort* v. *Helvering*, 69 Fed. (2d) 836. Granting the correctness of the majority opinion that the power was one to "supplement" or "modify" it would seem that any supple-

ment or modification of the share of any of the group of remaindermen would effect a " change by the exertion of a power." *Porter* v. *Commissioner*, *supra*. The fact that the power to change is given in the trust instrument and that any exercise would have been in compliance with the provisions of the instrument seems entirely immaterial. Powers to alter, amend, or revoke, where they exist, are usually contained in the trust instrument, and they must be exercised in accordance with the provisions thereof.

It seems to me that the question presented here is governed by the decision in *H. T. Cook et al.*, *Executors*, 23 B. T. A. 335; affirmed by the Circuit Court of Appeals for the Third Circuit, 66 Fed. (2d) 995, on authority of the *Porter* case. In that case, as here, the power of the creator of the trusts was limited to those of a group of beneficiaries, and it was held that the trust property was part of the gross estate under section 302 (d).

SMITH, SEAWELL, and TURNER agree with this dissent.